United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCO RAMIREZ,

    Plaintiff,

  v.

COUNTY OF MARIN; WILLIAM BURKE; MICHAEL DALY; and DOES 1 through 50, inclusive,

    Defendants.

No. C 10-02889 WHA

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

In this action for alleged employment discrimination and retaliation, defendants move for summary judgment on all claims and plaintiff moves for partial summary judgment on one aspect of one claim. For the reasons stated below, defendants' motion is **GRANTED** and plaintiff's motion is **DENIED**.

## STATEMENT

Plaintiff Marco Ramirez is Hispanic. He was hired by defendant Marin County in 1997, and he was not subject to any workplace discipline during his first decade of work for the County. The incidents giving rise to this action began in approximately 2008. At that time, plaintiff was a deputy probation officer with the title DPO II. Defendant William Burke was the chief probation officer, and defendant Michael Daly was the deputy chief probation officer (Ramirez Decl. ¶ 2).

In late 2007 and early 2008, plaintiff "made several officer safety complaints" to defendants Burke and Daly, including the supposed need for protective vests, weapons, and other equipment. Plaintiff also testified before a civil grand jury investigating such safety concerns and the impact of gang violence in Marin County (*id.* at ¶¶ 9–10). Defendant Burke selected plaintiff as one of two employees to testify before the grand jury on behalf of the probation department, without knowing the subject matter of the investigation (Burke Decl. ¶ 9).

On August 1, 2008, plaintiff filed a discrimination complaint with the County of Marin. It alleged that he had been discriminated against based on race and gender, and that he had been retaliated against for his officer-safety concerns (Poore Exh. B at Exh. 14). A year later, plaintiff received a letter stating that his complaint had been investigated, and that "[i]t has been determined that your allegations are unsubstantiated by the facts" (Ramirez Exh. C).

On August 13, 2008, plaintiff was suspended for three work days for insubordination. The developments leading up to this suspension were as follows. In January 2008, plaintiff was transferred to the Juvenile Services Division. Nicki Kuhn, the director of that division, imposed a dress code for her unit in April 2008. The dress code required male members of her staff to wear collared shirts in the workplace. Mr. Ramirez had worn football and baseball jerseys to work "for years," and he continued to do so. In May 2008, Ms. Kuhn told plaintiff that he was dressing inappropriately in the workplace and was required to wear a collared shirt. Plaintiff refused. The confrontation escalated over the course of two days, and plaintiff ultimately was removed from the workplace by Marin County Sheriff's Deputies. Ms. Kuhn charged plaintiff with insubordination and sent him a notice of intent to suspend him without pay. Defendant Burke conducted a suspension hearing on July 9, 2008. Several weeks later, defendant Burke determined that plaintiff had been insubordinate and suspended him for three days. The three-day suspension was a reduction from a recommended five-day suspension (Ramirez Decl. ¶¶ 13, 17–22; Poore Exh. B at 56; Burke Exh. B at 2, 6).

On January 29, 2009, plaintiff's employment with Marin County was terminated based upon a finding that he lacked honesty, integrity, and ethical and professional standards, and was unwilling or unable to comply with policies, regulations, and rules of conduct (Burke Exh. A

2

at 22). The developments leading up to plaintiff's termination were as follows. Plaintiff attended a class certification hearing in a civil class action concerning officer compensation on the morning of June 11, 2008 (Ramirez Decl. ¶ 26). This was not official duty but an individual matter. Defendant Daly later learned that plaintiff had reported to his supervisor that "he was working in Santa Rosa that morning, rather than attending to a personal matter in San Francisco." That same day, defendant Daly "also became aware that Plaintiff was using a County vehicle to commute to his home." In light of this information, Defendant Daly hired Dennis Finnegan as an outside investigator to conduct an internal affairs investigation of plaintiff (Daly Decl. ¶¶ 3–5).

After several months of investigation, Investigator Finnegan concluded that plaintiff had made multiple false statements about his whereabouts and activities in official records, as well as to his supervisors and in interviews with Investigator Finnegan. The investigation found that plaintiff had falsified case notes about his supposed interactions with probationers he was supervising and that he had submitted inaccurate time sheets and locator sheets. Investigator Finnegan also found that plaintiff had lied to his supervisors about his activities, and that he had used county vehicles for personal commutes (Daly Exh. A, B). Plaintiff disputes these findings and maintains that he was always truthful in his statements and record-keeping (Ramirez Decl. ¶¶ 27–32).

Defendant Daly sent plaintiff a notice of intent to terminate his employment on December 5, 2008. The notice, which was fourteen pages long, explained the bases for termination found by the investigation and appended voluminous items of documentary evidence from the investigation. Defendant Daly placed plaintiff on paid administrative leave the same day (Daly Exh. H, I). Defendant Burke conducted a pre-termination hearing on January 8, 2009, which plaintiff attended with his attorney (Ramirez Decl. ¶ 35). Defendant Burke sent plaintiff a final notice of discipline on January 29, 2009. The notice terminated plaintiff's employment with the county, effective at the end of February 2009 (Burke Exh. A).

A year and a half later, plaintiff filed this district court action, asserting six claims for relief: (1) employment discrimination on the basis of race and national origin; (2) employment retaliation for lodging a discrimination complaint; (3) failure to prevent and investigate

3

discrimination; (4) employment retaliation for lodging a working-conditions complaint; (5) employment retaliation for lodging a compensation complaint; and (6) civil rights violations. The first five claims were asserted only against the County. The last claim was asserted only against defendants Burke and Daly.

All three defendants now move for summary judgment on all claims against them. Plaintiff moves for partial summary judgment on one aspect of the civil rights claim. This order follows full briefing and a hearing.

**ANALYSIS**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this analysis, all reasonable inferences must be drawn in the light most favorable to the non-moving party. *Johnson v. Racnho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010). Unsupported conjecture or conclusory statements, however, cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *Id.* at 1102–03.

### 1.   CLAIM FOR EMPLOYMENT DISCRIMINATION (CLAIM ONE).

Plaintiff alleges that he suffered adverse employment actions "on the basis that plaintiff was a Hispanic employee." Plaintiff asserts that those actions by the County violated both "California Government Code § 12940 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq." (Compl. ¶¶ 48–53).

### A.   Federal Law Basis for Claim.

"To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim. Exhaustion of administrative remedies under Title VII requires that the complainant file a *timely* charge with the EEOC, thereby allowing the agency time to investigate the charge." *Lyons v. England*, 307 F.3d 1092, 1103–04 (9th Cir. 2002) (internal citations omitted) (emphasis added).

The EEOC charge generally must be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred." If, however, the aggrieved individual "initially instituted proceedings with a State or local agency," then the EEOC charge must be filed "within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." 42 U.S.C. 2000e-5(e)(1).

Here, the latest adverse employment action was plaintiff's termination in January 2009, effective February 2009. Plaintiff did file a complaint with a local agency a year later, in February 2010 (RJN Exh. A). Notice that the local proceedings had been terminated at plaintiff's request was issued that same month (RJN Exh. B). Thus, the deadline for plaintiff to file an EEOC charge was the *earlier* of December 2009 (300 days after his termination) or March 2010 (30 days after termination of the local proceedings).[*]

The deadline was December 2009. Plaintiff requested a right-to-sue notice from the EEOC in March 2010 (RJN Exh. C). This was not timely. Defendants assert that no timely

---

[*] If requested by a party and supplied with the necessary information, a court shall take judicial notice of facts that are not subject to reasonable dispute. FRE 201. Courts may properly take notice of the contents of documents filed with an administrative agency. *See Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001). Defendants' request for judicial notice is therefore **GRANTED**.

5

EEOC charge was filed, and there is no such charge in the record. Plaintiff does not offer any evidence that he filed a timely EEOC charge, and indeed he does not even address defendants' argument that his Title VII claims are time-barred. Plaintiff had a full opportunity to show that he exhausted his administrative remedies by filing a timely EEOC charge, but he utterly failed to do so. On the present record, plaintiff may not assert any Title VII claim.

**B. State Law Basis for Claim.**

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . ." *Gun v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). *First*, plaintiff has "the initial burden to establish a prima facie case of discrimination." *Second*, if "plaintiff establishes a prima facie case, a presumption of discrimination arises" and "the burden shifts to the employer to rebut the presumption." *Third*, if the employer successfully rebuts the presumption, then "the presumption of discrimination disappears" and "plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* at 354–56.

To make a prima facie showing of discrimination based on race or national origin, plaintiff must prove (1) that he was a member of a protected class, (2) that he was performing competently as a probation officer, (3) that he suffered an adverse employment action, and (4) that some other circumstance suggests discriminatory motive for the adverse action. *Id.* at 355. As to the first element, plaintiff argues that he was a member of two different protected classes — Hispanics and males. His compliant, however, alleged employment discrimination only on the basis of race or national origin, not on the basis of gender. Plaintiff may not now inject a new discrimination theory into the action at the summary judgment stage. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). His arguments regarding supposed gender discrimination — for example, attacking the policy that men but not women were required to wear collared shirts — need not be addressed with respect to this claim.

As to plaintiff's claim for discrimination based on his Hispanic ethnicity, he cannot carry his burden of establishing a prima facie case of discrimination, because no evidence suggests a

6

discriminatory motive for his suspension or termination. The County cites evidence that plaintiff was suspended for insubordination and terminated because of the job-performance concerns identified by the Finnegan investigation (Burke Exh. A, B). The County argues that plaintiff's "claim that there was a discriminatory motive by the County of Marin are [*sic*] based on unsupported speculation and hearsay" (Br. 18). This is enough to negate the discriminatory motive element of the prima facie case for purposes of the summary judgment analysis and shift the burden of production to plaintiff.

In response, plaintiff does not cite any evidence that would support an inference of discriminatory motive. *First*, plaintiff states that Bryan Lambert, "a white Caucasian" who "was investigated at the same time as the Plaintiff by the same investigator," was not terminated but rather "was allowed to resign with a settlement agreement" (Opp. 18, 21). Plaintiff, however, provides no evidence regarding the findings of the Lambert investigation or any other evidence that would show plaintiff and Mr. Lambert to be similarly situated. The bare fact that a different employee of a different race was not fired does not support a reasonable inference of discriminatory motive for plaintiff's termination.

*Second*, plaintiff states that "Caucasian males were not required to change into collared shirts, and were not the subject of any adverse action as a result of wearing non-collared shirts" (*id.* at 21). This statement is unsupported by any citation to the evidentiary record. Accordingly, it does not support an inference of discriminatory intent. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

*Third*, at the hearing on the instant motions, plaintiff's counsel emphasized that plaintiff disagrees with the findings of the Finnegan investigation and insists that he always has been truthful. The fact that plaintiff disputes the findings of the investigation, however, does not indicate that any supposed inaccuracies resulted from discrimination.

Plaintiff is unable to prove a prima facie case of race or national origin discrimination because he cites no evidence showing discriminatory motive for his suspension or termination.

7

1  This order need not consider the parties' arguments concerning the competent performance
2  element of the prima facie case. This order also need not consider the parties' arguments
3  concerning the second and third steps of the discrimination analysis regarding pretext and
4  legitimate non-discriminatory reasons. The County's motion for summary judgment on the claim
5  for employment discrimination is **GRANTED**.

### 2. CLAIM FOR RETALIATION FOR LODGING A DISCRIMINATION COMPLAINT (CLAIM TWO).

Plaintiff alleges that the County of Marin "violated Government Code § 12940 and Title VII of the Civil Rights Act of 1964 . . . when it retaliated against plaintiff in the terms and conditions of employment, took adverse employment actions against plaintiff for reporting and lodging complaints of discriminatory treatment in the workplace, participating in investigations or proceedings involving claims of discrimination, and requesting that defendants take immediate remedial measures and conduct fair and impartial investigations into discriminatory conduct on the part of supervisors and managers" (Compl. ¶¶ 54–59). The Title VII basis for the claim is time-barred for the reasons addressed above. The state-law basis fails as well, but for a different reason.

The three-stage burden-shifting test used for claims of discrimination, which was described above with reference to the claim for employment discrimination, is also used for claims of retaliation under California law. To establish a prima facie case of retaliation, plaintiff must show "that he engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action." *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). The County argues that plaintiff cannot show a causal link between his discrimination complaints and his suspension or termination. As stated, the County has cited evidence non-retaliatory reasons for those adverse actions. The County also cites evidence that some decision-makers did not even know of plaintiff's complaints or their subject matter until after their recommendations or decisions were made (Br. 21–22). This showing is sufficient to negate the causal link element of the prima facie case for purposes of the summary judgment analysis and shift the burden of production to plaintiff.

8

In response, plaintiff does not identify any admissible evidence that would support a reasonable inference of causality. *First*, plaintiff argues that "the practice at the County of Marin was to notify the subjects of the investigations immediately upon filing" of a complaint (Opp. 21). Plaintiff cites anecdotal evidence that in three other internal EEO investigations, "the subject was notified almost immediately after the EEO complaint was filed" (Opp. 11; Morris Decl. ¶ 5). This evidence does not show that the supposed practice was followed in this particular instance — much less that the pendency of plaintiff's complaint *caused* the decisions to suspend and terminate his employment. *Second*, plaintiff states that defendants Burke and Daly "were aware of the EEO complaint" at least as of the beginning of the January 2009 pre-termination hearing (Opp. 21–22). Again, the fact that these individuals knew of plaintiff's complaint by that time does not support a reasonable inference that defendant Daly ultimately decided to terminate plaintiff's employment *because* he had lodged the complaint. Even if we assume defendants Burke and Daly learned of plaintiff's complaint on the time frame most favorable to plaintiff, that still would not satisfy plaintiff's burden of producing evidence of causation. Temporal proximity, standing alone, is insufficient to establish causation for a prima facie case of retaliation. *Chen v. County of Orange*, 96 Cal. App. 4th 926, 931 (2002).

Plaintiff is unable to establish a prima facie case of retaliation for lodging his discrimination complaint, because he is unable to show that his employment was suspended or terminated *because* of the complaint. The County's motion for summary judgment on plaintiff's claim for retaliation for lodging a discrimination complaint is **GRANTED**.

### 3. CLAIM FOR RETALIATION FOR LODGING A COMPENSATION COMPLAINT (CLAIM FIVE).

Plaintiff alleges that the County of Marin "violated the anti-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. § 215 when it terminated plaintiff's employment, placed him under investigation for participating in court proceedings, discriminated, retaliated, and took adverse employment actions . . . against plaintiff for filing and/or lodging complaints regarding defendant's failure to properly pay overtime compensation and interference with plaintiff's attempts to seek overtime compensation in the workplace, and participating in court proceedings

9

1 pertaining to the County of Marin's improper failure to pay overtime compensation to plaintiff
2 and other Deputy Probation Officers" (Compl. ¶¶ 70–74).

3 Again, the three-stage burden-shifting test applies, and in order to establish a prima facie
4 case of retaliation, plaintiff must show "that he engaged in a protected activity, his employer
5 subjected him to adverse employment action, and there is a causal link between the protected
6 activity and the employer's action." *Flait*, 3 Cal. App. 4th at 476. The County argues that
7 plaintiff cannot establish a causal link between his compensation complaints and the suspension
8 and termination of his employment. The County has cited evidence that plaintiff "was suspended
9 and disciplined based upon his misconduct," and the County argues that plaintiff "has no
10 evidence to support a claim that he was treated any differently than similarly situated employees"
11 (Br. 23). This showing is sufficient to negate the causal link element of the prima facie case for
12 purposes of the summary judgment analysis and shift the burden of production to plaintiff.

13 In response, plaintiff does not identify any admissible evidence that would support an
14 inference of causality. Plaintiff claims that he was "placed under investigation for his
15 participation in the overtime hearing" and that he "was targeted because he attended the hearing"
16 (Opp. 22–23). These statements are mere lawyer argument; they are not supported by any
17 citation to the evidentiary record. Plaintiff's statement of facts does cite relevant evidence, but
18 that testimony does not support these statements either. On the contrary, it either does not
19 address the reason why the investigation was started, or it describes the reason as suspicion that
20 plaintiff was misusing a County vehicle. The fact that plaintiff attended the hearing is not cited as
21 a reason why the investigation was initiated (Opp. 12; Poore Exh. C at 49; Poore Exh. B at 163).

22 Plaintiff is unable to establish a prima facie case of retaliation for lodging compensation
23 complaints, because he is unable to show that his employment was suspended or terminated
24 *because* of his complaints. The County's motion for summary judgment on plaintiff's claim for
25 retaliation for lodging a compensation complaint is **GRANTED**.

26     **4.    CLAIM FOR RETALIATION FOR LODGING A WORKING-CONDITIONS COMPLAINT (CLAIM FOUR).**
27
28 Plaintiff alleges that the County "violated California Labor Code § 6310 . . . when it
retaliated against plaintiff, terminated his employment and took adverse employment actions . . .

10

1  as a direct result of plaintiff's complaints of unsafe or hazardous working conditions"
2  (Compl. ¶¶ 66–69). Defendant argues that this claim is barred by plaintiff's failure to exhaust
3  administrative remedies (Br. 22–23). Defendant is correct.

4  "That failure to exhaust administrative remedies is a bar to relief in California court has
5  long been the general rule." *Sierra Club v. San Joaquin Local Agency Formation Comm'n*,
6  21 Cal. 4th 489, 495 (1999). "Any employee who believes that he or she has been discharged or
7  otherwise discriminated against by any person in violation of Section 6310 or 6311 may file a
8  complaint with the Labor Commissioner pursuant to Section 98.7." CAL. LAB. CODE § 6312.
9  Defendant states that "[t]here is no evidence to suggest that Plaintiff filed a complaint with the
10 California Labor Commissioner prior to filing this lawsuit" and that without such evidence the
11 fourth claim is barred (Br. 23).

12 In response, plaintiff does not claim to have filed any such complaint. Instead, plaintiff
13 argues that no exhaustion requirement applied to his Section 6310 claim (Opp. 22). The line of
14 decisions plaintiff cites, however, does not support this proposition. Those decisions addressed
15 "the impact of these [Labor Code] sections upon an employee's common law cause of action for
16 retaliatory dismissal." *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 300 (1982). They held that
17 the state common-law cause of action for retaliatory dismissal, which predated Section 6310,
18 continued to exist after the enactment of Section 6310 and related sections of the California Labor
19 Code, and that the common-law cause of action was not subject to the statutory exhaustion
20 requirement. *Id.* at 304. Here, plaintiff brought a statutory claim under Section 6310, not a
21 common-law claim. The case law addressing common-law retaliatory dismissal is inapposite.

22 Plaintiff's Section 6310 claim is barred by his failure to exhaust the administrative remedy
23 afforded by Section 6312. The County's motion for summary judgment on plaintiff's claim for
24 retaliation for lodging a working-conditions complaint is **GRANTED**.

25 **5. CLAIM FOR FAILURE TO PREVENT AND INVESTIGATE DISCRIMINATION (CLAIM THREE).**

26 Plaintiff Ramirez alleges that the County "violated Government Code § 12940(k) and
27 Title VII of the Civil Rights Act of 1964 . . . when defendants knowingly and recklessly
28 discriminated and retaliated against plaintiff, failed to conduct reasonable and impartial

11

1 investigation when plaintiff complained about discriminatory conduct on the part of supervisors
2 and management, and failed to take reasonable steps necessary to investigate the misconduct and
3 prevent it from occurring and continuing" (Compl. ¶¶ 60–65). The Title VII basis for the claim is
4 time-barred for the reasons addressed above. The state-law basis for the claim fails because
5 plaintiff is unable to prove that he actually suffered any underlying discrimination or retaliation.
6 *See Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89 (1998). Plaintiff's opposition
7 brief does not address this claim. The County's motion for summary judgment on the claim for
8 failure to prevent and investigate discrimination is **GRANTED**.

### 6. CLAIM FOR CIVIL RIGHTS VIOLATIONS (CLAIM SIX).

Plaintiff alleges that defendants Burke and Daly violated "the Civil Rights Laws of the United States, 42 U.S.C. §§ 1983, 1985." Specifically, plaintiff alleges that defendants Burke and Daly violated his rights under the First Amendment, the equal protection clause, and the due process clause (Compl. ¶¶ 75–81). Defendants Burke and Daly move for summary judgment on the entire claim, and plaintiff moves for summary judgment on the due process theory. Each theory is addressed in turn below.

#### A. First Amendment.

Plaintiff alleges that his First Amendment rights were violated "when defendants retaliated against plaintiff for testifying before the Grand Jury pertaining to matters which are of public concern." He also alleges more generally that he was retaliated against "because he opposed practices forbidden under the anti-discrimination laws and equal protection laws of the United States" (Compl. ¶¶ 76, 78).

"To make a successful claim for wrongful retaliation under the first amendment and section 1983, the plaintiff must prove that: (1) the statement that brought on the retaliation is one of 'public concern;' (2) the constitutionally protected expression is a 'substantial' or 'motivational' factor in the employer's adverse decision or conduct; and (3) the interests of the plaintiff/employee in commenting on the matter of public concern outweigh the state's interest in maintaining efficient public services." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1038 (9th Cir. 1990). Additionally, "[w]hen a public employee sues a government employer under the

1 First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a
2 matter of public concern. If an employee does not speak as a citizen, or does not address a matter
3 of public concern, a federal court is not the appropriate forum in which to review the wisdom of a
4 personnel decision taken by a public agency allegedly in reaction to the employee's behavior."
5 *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011) (internal quotations and
6 citation omitted).

7 Defendants Burke and Daly address several statements by plaintiff and argue that none of
8 them is a proper basis for a First Amendment claim (Br. 24–26). In response, plaintiff is unable
9 to identify any statement that could support a viable First Amendment claim.

10 *First*, the parties address the internal complaints that plaintiff made concerning his
11 supervisors, his compensation, and his safety. These complaints were made within the
12 workplace, in plaintiff's capacity as an employee. They were not made in any public forum or in
13 plaintiff's capacity as a citizen. Accordingly, they cannot form the basis for plaintiff's First
14 Amendment claim. Plaintiff argues that officer safety and gender discrimination in the
15 workplace — the subjects of some of his internal complaints — are matters of public concern
16 (Opp. 23–24). This may be true. Plaintiff, however, does not cite any evidence or authority
17 showing that he was acting in his capacity as a citizen rather than in his capacity as an employee
18 when he made those internal complaints.

19 *Second*, the parties address plaintiff's grand jury testimony. Defendants Burke and Daly
20 again argue that "those discussions could not form the basis of a First Amendment violation
21 against Defendants Burke and Daly" because speech by public employees pursuant to their
22 official duties is not protected (Br. 25). *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("We
23 hold that when public employees make statements pursuant to their official duties, the employees
24 are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate
25 their communications from employer discipline."). Defendants present evidence that defendant
26 Burke selected plaintiff to talk to the grand jury "to represent the Probation Department"
27 (Burke Decl. ¶ 9). In response, plaintiff does not present any evidence from which a reasonable
28 jury could infer that his grand jury testimony was given in his capacity as a citizen rather than as a

13

1 representative of his employer. The opposition brief does not even address this
2 argument (Opp. 23–24).

3 This order notes that plaintiff's complaint identified only his grand jury testimony as a
4 basis for his First Amendment theory, and that his opposition brief identifies only his internal
5 complaints and grand jury testimony as bases for that theory (Compl. ¶ 78; Opp. 23–24). Because
6 plaintiff does not argue that his attendance at the class certification hearing was protected
7 expression for purposes of his First Amendment theory, this order need not consider it as a
8 possible factual basis for that theory.

9 Plaintiff's First Amendment theory fails because he is unable to identify any protected
10 speech he made in his capacity as a citizen rather than as a government employee. As to the First
11 Amendment basis for plaintiff's claim for civil rights violations, the motion for summary
12 judgment by defendants Burke and Daly is **GRANTED**. This order need not reach the parties'
13 arguments concerning when defendants Burke and Daly became aware of the content of
14 Mr. Ramirez's internal complaints and grand jury testimony.

### B. Equal Protection.

16 Plaintiff alleges that defendants Burke and Daly violated "the equal protection laws of the
17 United States and California" when they "discriminated against plaintiff and other similarly
18 situated male employees on the basis of sex and gender when they mandated a 'dress code' which
19 required 'collared shirts' for male employees within the Probation Department, but not female
20 employees" (Compl. ¶ 77).

21 To prove a Section 1983 claim for an equal protection violation, plaintiff must show both
22 "that actions of the defendants had a discriminatory impact, *and* that defendants acted with an
23 intent or purpose to discriminate based upon [plaintiff's] membership in a protected class."
24 *Darensburg v. Metropolitan Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011) (emphasis
25 added). Defendants Burke and Daly argue that plaintiff cannot prove the intent prong. As stated,
26 defendants have cited evidence that plaintiff was disciplined and discharged for his job
27 performance. They argue that plaintiff is unable to show that the dress code was enacted for a
28

discriminatory purpose, or that his suspension or termination was motivated by discrimination (Br. 26).

Plaintiff's opposition brief does not address the equal protection theory of his sixth claim. The brief discusses the dress code with reference to his first claim for employment discrimination, but it does not cite any evidence from which a reasonable jury could infer that the dress code was enacted for a discriminatory purpose, or that plaintiff's suspension or termination was motivated by discrimination. The fact that the dress code required men but not women to wear collared shirts shows a disparate impact, but it does not imply discriminatory intent. Impact and intent are different elements, and both are required for an equal protection claim based on gender discrimination.

Plaintiff's equal protection theory fails because he is unable to prove discriminatory intent for the enactment of the dress code or for the decisions to suspend and terminate his employment. As to the equal protection basis for plaintiff's claim for civil rights violations, the motion for summary judgment by defendants Burke and Daly is **GRANTED**.

### C. Due Process.

Plaintiff alleges that defendants Burke and Daly violated his substantive and procedural due process rights "when they (1) refused to provide plaintiff with a fair and impartial due process hearing prior to termination, (2) refused to provide plaintiff with a neutral and unbiased hearing officer to determine if plaintiff should be terminated, (3) refused to comply with the procedural protections afforded to plaintiff as a 'peace officer' under the Public Safety Officer's Procedural Bill of Rights . . . and (4) terminated plaintiff for untrue stigmatizing information that has resulted in plaintiff being blacklisted as a peace officer" (Compl. ¶ 79). Defendants move for summary judgment on all of these theories. Plaintiff moves for summary judgment that his "procedural due process rights were violated when Defendants William Burke and Michael Daly provided Plaintiff with a biased hearing officer that was not neutral, and was involved in the controversy that led to Plaintiff's suspension and termination" (Br. 1).

Defendants Burke and Daly argue that plaintiff's due process claim fails because Mr. Ramirez was provided with adequate process. They note, for example, that he was given notice

15

1   of the proposed suspension and termination, that he was provided copies of the materials on
2   which the recommendations were based, and that he was given a right to respond (Br. 27).
3   Plaintiff's opposition to the due process part of defendants' motion is merely a copy of the
4   argument portion of the memorandum supporting plaintiff's own motion for partial summary
5   judgment (Dkt. No. 52 at 9–13; Dkt. No. 62 at 24–28). Plaintiff makes two main points, neither
6   of which identifies a due process violation. Plaintiff has waived all other due process theories
7   alleged in his complaint.

8   *First*, plaintiff argues that "the hearing process itself [preceding plaintiff's termination]
9   was unfair when Burke convened the first session of the hearing in private so that he could
10  question Finnegan" (Opp. 27). The meeting between defendant Burke and Investigator Finnegan
11  was not part of the hearing. As plaintiff himself acknowledges, the meeting took place "before
12  the actual *Skelley* hearing" (*id.* at 28). Plaintiff claims that the meeting was improper because it
13  was not disclosed to him, but he cites no authority for this view. The single decision plaintiff
14  cites held that "it would violate due process for an administrative agency to conduct a hearing
15  while failing to disclose evidence to the party before it, and then to make a decision in which it
16  reveals the undisclosed evidence for the first time." *Today's Fresh Start, Inc. v. Los Angeles*
17  *Cnty. Office of Educ.*, 197 Cal. App. 4th 436, 463 (2011). Plaintiff does not assert that the
18  termination decision revealed evidence from the meeting with Investigator Finnegan for the
19  first time.

20  Plaintiff contends that the denial of his request to question Investigator Finnegan at the
21  pre-termination hearing violated his due process rights, but he cites no authority for his supposed
22  right to examine the investigator at the hearing (Opp. 28). Indeed, a "pretermination 'hearing,'
23  though necessary, need not be elaborate." *Cleveland Bd. of Educ. v. Loudermill*,
24  470 U.S. 532, 545 (1985). At the hearing on the instant motion, plaintiff's counsel emphasized
25  that defendant Daly and Investigator Finnegan had a pre-existing friendship. Again, however,
26  plaintiff cites no authority suggesting that their friendship constituted a due process violation.

27  *Second*, plaintiff argues that defendant Burke, who conducted the pre-suspension and
28  pre-termination hearings, was a biased and involved hearing officer who was embroiled in the

16

1  underlying controversies (Opp. 24–27). "[T]he failure to provide an impartial decisionmaker at
2  the pretermination stage, of itself, does not create [due process] liability, so long as the
3  decisionmaker at the post-termination hearing is impartial." *Walker v. City of Berkeley*,
4  951 F.2d 182, 184 (9th Cir. 1991). Here, plaintiff was entitled to appeal his termination to the
5  Marin County Personnel Commission (Burke Exh. A at 22). For each such appeal, the
6  independently-appointed Personnel Commission holds an evidentiary hearing at which the
7  decision-maker who made the termination decision bears the burden of proving that it was
8  justified. Plaintiff chose not to appeal his termination to the Personnel Commission
9  (Burke Decl. ¶ 6). Because an independent post-termination hearing was available, plaintiff's
10 allegations of bias at the pre-termination stage do not state a due process claim.

11  Plaintiff's many arguments to the contrary are unavailing. Plaintiff argues that "the
12 general rule is that a fair pre-termination hearing is required," but plaintiff cites no authority
13 requiring a neutral and uninvolved hearing officer at a pre-termination hearing (Reply Br. 7). On
14 the contrary, the decision plaintiff cites on this point characterizes essential fairness as "a flexible
15 notion" requiting at a minimum "notice and an opportunity to be heard." *Vanelli v. Reynolds Sch.*
16 *Dist. No. 7*, 667 F.2d 773, 779 (9th Cir. 1982). Authority plaintiff cites elsewhere states that due
17 process does not disqualify a decision-maker merely because he has "familiarity with the facts of
18 a case" or "simply because he has taken a position, even in public, on a policy issue related to the
19 dispute." *Burrell v. City of Los Angeles*, 209 Cal. App. 3d 568, 578 (1989).

20  Plaintiff next argues that his opponents' "entire argument rests on the two faulty premises
21 that (1) there was no finality to the process until the Personnel Commission acted, and
22 (2) Defendants provided Plaintiff some kind of post-termination hearing before the Personnel
23 Commission prior to the actual . . . termination or suspension" (Reply Br. 7). The significance of
24 the appeal process, however, is not based on either of those assumptions. Rather, the key fact is
25 the availability of an independent *post*-termination hearing. *See Walker*, 951 F.2d at 184.
26 Plaintiff's reference to a post-termination hearing prior to the actual termination is nonsensical
27 and at odds with the law and the facts.
28

Plaintiff next argues that defendant's reliance on his right to appeal his termination to the Personnel Commission is unfair because he could "elect his remedies by either filing an action with the Personnel Commission, or filing an action in state for federal court, but not both" (Reply Br. 8). Plaintiff, however, cites no authority for the proposition that appealing his termination to the Personnel Commission and filing a court action were mutually exclusive options. Plaintiff cites only one decision, which addressed exhaustion requirements in the context of the Civil Service Act and the Fair Employment and Housing Act. *See Schifando v. City of Los Angeles*, 31 Cal. 4th 1074. This decision contained no such holding. Indeed, the simultaneous pursuit of a district court action alongside a termination appeal to a government personnel board is not unprecedented. *See Walker*, 951 F.2d at 184.

Plaintiff also argues that "California law requires that the pre-termination hearing officer be unbiased, uninvolved, and have no personal animosity towards the employee" (Reply Br. 9). State law cannot save plaintiff's constitutional claim. In any event, none of the decisions plaintiff cites articulates such a requirement.

At the hearing on the instant motions, plaintiff's counsel emphasized that plaintiff disagrees with the findings of the Finnegan investigation and insists that he always has been truthful. Plaintiff, however, does not explain how any supposed inaccuracies in Investigator Finnegan's reports might constitute a due process violation in light of the procedures afforded to plaintiff in conjunction with his termination. Plaintiff was given notice of Investigator Finnegan's findings and at least two opportunities to dispute them.

Plaintiff's due process theory fails because he is unable to identify any aspect of his suspension or termination proceedings that constituted a due process violation. As to the due process basis for plaintiff's claim for civil rights violations, the motion for summary judgment by defendants Burke and Daly is **GRANTED**. Plaintiff's motion for partial summary judgment is **DENIED**. This order need not reach the parties' arguments concerning qualified immunity, conspiracy, and whether various circumstances triggered entitlement to any hearing at all.

### 7. **DEFENDANTS' DECLARATIONS.**

Plaintiff resists summary judgment for the additional reason that defendants' motion supposedly "is procedurally defective as none of the declarations that they submitted in support of the motion are under 'penalty of perjury'" (Opp. 18). Defendants acknowledged this "inadvertent omission" and submitted amended declarations which cured this defect but were identical to the original declarations in all other respects (Reply Br. 15). Summary judgment will not be denied on the basis of this formality.

*         *         *

Defendants' motion for summary judgment is **GRANTED**, and plaintiff's motion for partial summary judgment is **DENIED**. This order need not reach the parties' arguments concerning possible discovery violations by plaintiff and the adequacy of notice to defendant Daly.

**CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment is **GRANTED**, and plaintiff's motion for partial summary judgment is **DENIED**. Defendants' request for judicial notice is **GRANTED**. To the extent not specifically addressed herein, all evidentiary objections are **MOOT**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: October 25, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

19